UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christine E. Huwe                                             Civ. No. 15-3687 (PAM/LIB)
                                                              Civ. No. 17-1647 (PAM/LIB)

          Plaintiff,

v.                                                            **MEMORANDUM AND ORDER**

Megan J Brennan, Postmaster General,

          Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the following reasons, the Motion is granted.

**BACKGROUND**

In 1998, Plaintiff Christine Huwe began working for the United States Postal Service ("USPS") and Defendant Megan Brennan.[1] (Secord Decl. Ex. A (Docket No. 62-1) (Huwe Dep.) at 14.) In 2012, Huwe became the postmaster at the post office in Bovey, Minnesota. (Id. at 56.) Her direct supervisor was David Krage, a manager of post office operations, who supervised about 60 postmasters and 145 post offices in total. (Id. Ex. I. (Docket No. 62-9) (Krage Dep.) at 10-11.) Huwe took maternity leave on January 6, 2014. (Id. at 82; id. Ex. H (Docket No. 62-8) (Huwe Notes) at 4.) While Huwe was on maternity leave, at least two rural postal carriers complained to Krage that Huwe had verbally disrespected them, humiliated them, and caused issues with their pay. (Id. Ex. R (Docket No. 62-18) at 12, 17-19; id. Ex. S (Docket No. 62-19) at 18-20.)

---

[1]  Because Huwe sued Brennan in her official capacity, the Court references the USPS and Brennan interchangeably.

On March 11, 2014, Krage met with Huwe to discuss returning to work full time following her maternity leave. Huwe's told Krage that her child would need doctor appointments because of some physical issues. (Huwe Dep. at 98.) Krage also told Huwe about the allegations against her and informed her that he wanted to reassign her to the post office in Deer River, Minnesota, to "give her a chance to be able to make her appointments with her infant" and give him "a chance to investigate allegations that were made against her." (Krage Dep. 19-20.) The postmaster positions at the Deer River and Bovey offices are identical in compensation, duties, and benefits. (Huwe Dep. at 60, 63-65, 160; Secord Decl. Ex. T (Docket No. 62-20) (Metzer Dep.) at 8-10.) But the Bovey office was "[v]ery short-staffed" because it did not have any additional clerks. (Krage Dep. at 20.)

On March 12, 2014, Huwe returned to work and transferred to the Deer River office. (Huwe Dep. at 85.) Debra Metzer, who had been the postmaster of the Deer River office, transferred to the Bovey office. (Id. at 104.) However, because there was no formal transfer of the office in charge ("OIC") duties, Metzer retained some of the managerial duties at the Deer River office. Huwe testified that Krage "wanted Deb Metzer to be placed as OIC in Bovey and [Huwe] as OIC in Deer River," but Huwe was unavailable on the dates Krage proposed to transfer OIC duties. (Id. at 104-07.)

One month after Huwe transferred to the Deer River office, Metzer requested that the staff clerk at the Deer River office move to the Bovey office. (Metzer Dep. at 23-24; Huwe Dep. 130-31.) At about the same time, Huwe first contacted the League of Postmasters, labor relations at the National Association of Postmasters, and Krage's

supervisor, regarding her concerns that Krage was discriminating against her. (Huwe Dep. at 148; Huwe Ex. 1 (Docket No. 79-1).) Huwe was told to give Krage more time to resolve her concerns about why she was reassigned.

Krage reassigned Huwe back to the Bovey office in July 2014. (Huwe Dep. at 177.) On July 17, 2014, three days after she returned to the Bovey office, Huwe went on leave. (Id. at 131.) She claims that she had a mental breakdown after she discovered that the Bovey office was in disarray, and her psychologist diagnosed her with major depression, social phobia, and generalized anxiety disorder. (Id. at 85-86.)

While in leave-without-pay status, Huwe met with Krage and others to "rectify the situation." (Id. at 103.) Brennan also engaged in the reasonable accommodation process, in which Huwe's only requested accommodation was "[t]o not work under Mr. David Krage." (Id. at 192.) Huwe initiated her first EEO activity on September 8, 2014. (Secord Decl. Ex. C (Docket No. 62-3).) USPS personnel again tried to "resolve differences," even attempting to find a different position for her, but nothing was available. (Huwe Dep. at 188; Secord Decl. Ex. B (Docket No. 62-2) at 25.)

On August 15, 2016, Huwe's employment was terminated for being in a leave-without-pay status for more than one year. (Secord Decl. Exs. P, GG (Docket Nos. 62-16, 62-33).)

Huwe filed her first lawsuit (Huwe I) while on leave in 2015. Huwe I raises claims of sex discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq., discrimination in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and failure to accommodate in violation of the Americans with

3

Disabilities Act ("ADA"), 42 U.S.C § 12112 et seq.  (Am. Compl. (Docket No. 19), 15-cv-3687.)  After her termination, Huwe filed a second lawsuit (Huwe II), claiming failure to accommodate in violation of the Rehabilitation Act of 1973 and that her termination was discriminatory retaliation in violation Title VII.  (Compl. (Docket No. 45), 17-cv-1647.)  The Court consolidated these matters, and Brennan now moves for summary judgment on all claims in both cases.

## DISCUSSION

### A.     Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party."  Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### A.     Failure to Exhaust Administrative Remedies

Brennan argues that this Court lacks subject-matter jurisdiction over the alleged discriminatory acts related to Huwe I's Title VII claims, because Huwe failed to exhaust her administrative remedies.  "Federal employees asserting Title VII claims must exhaust

4

their administrative remedies as a precondition to filing a civil action in federal district court." McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995). This includes consulting an EEO counselor "in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). The employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." Id. § 1614.105(a)(1). And "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

Huwe relies on the continuing violations doctrine to argue that all of the alleged discriminatory acts are exhausted because they relate to claims she presented to an EEO counselor. But the continuing violations doctrine generally applies to hostile work environment claims, not to discrimination and retaliation claims. Betz v. Chertoff, 578 F.3d 929, 937-38 (8th Cir. 2009) (concluding that the continuing violation doctrine did not apply to a retaliation claim); see also Nat'l R.R. Passenger Corp., 536 U.S. at 122 (holding that a claim of hostile work environment would not be time barred under the continuing violations doctrine). The continuing violations doctrine can save an untimely claim that is sufficiently related to a timely presented claim, but it applies only "when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." Treanor v. MCI Telecommc'ns Corp., 200 F.3d 570, 573 (8th Cir. 2000) (quotation omitted). The manifestations "must be more than the mere consequences of past discrimination." Id. And at least one incident of discrimination must occur within the limitations period. Id. Here, Huwe does not allege hostile work environment, and her

5

claims demonstrate the consequences of discrete acts of alleged discrimination. Thus, the continuing violations doctrine does not apply.

Because Huwe initiated her first EEO activity on September 8, 2014, the Court lacks subject-matter jurisdiction to consider any alleged discriminatory act that occurred before July 25, 2014. See Bailey v. U.S. Postal Serv., 208 F.3d 652, 654-55 (8th Cir. 2000) (affirming judgment for failure to exhaust administrative remedies against a postal employee who did not comply with the 45-day requirement). Huwe I's Title VII claims for sex and retaliatory discrimination relate to alleged discrimination that occurred leading up to, or in connection with, her decision to take a leave of absence on July 17, 2014. Thus, these alleged acts of discrimination are outside the Court's subject-matter jurisdiction, and Huwe I's Title VII claims are dismissed for failure to exhaust administrative remedies.

**B.   Title VII Claims**

But all of Huwe's Title VII claims are meritless even if the continuing violations doctrine applies. Title VII prohibits employers from discriminating on the basis of sex or retaliating against an employee who asserts her rights under Title VII. Fiero v. CSG Sys., Inc., 759 F.3d 874, 878, 880 (8th Cir. 2014); accord 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).

To survive summary judgment, "a plaintiff must show either direct evidence of a Title VII violation or create an inference of discrimination or retaliation under the McDonnell Douglas burden-shifting framework." Shirrell v. St. Francis Med. Ctr., 793 F.3d 881, 887 (8th Cir. 2015). Direct evidence "show[s] a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a

6

finding by a reasonable fact finder that an illegitimate criterion actually motivated" the employer to take the allegedly discriminatory action. Philipp v. ANR Freight Sys., Inc., 61 F.3d 669, 673 (8th Cir. 1995) (quotation omitted).

Huwe argues that direct evidence exists because Krage referenced her newborn in his decision to reassign her to the Deer River office. But she told Krage that her newborn had medical issues, that she would need time off to make "[r]egular doctor appointments for an infant," and that a "lack of staffing" would have made that difficult at the Bovey office. (Huwe Dep. at 99-100; Krage Dep. at 19-20.) Krage testified that he reassigned Huwe to the Deer River office to "give her a chance to be able to make her appointments" because the "Bovey office itself didn't have any clerk staff." (Krage Dep. at 19-20.) Krage also wanted an opportunity "to investigate allegations that were made against [Huwe]." (Id.) Even in a light favorable to Huwe, no direct evidence exists and Krage did not reassign Huwe for any discriminatory reason.

In the absence of direct evidence of discrimination, Huwe must first "make a prima facie case of discrimination or retaliation." Shirrel, 793 F.3d at 887. If she establishes her prima facie case, the burden shifts to the Brennan to "show[] a legitimate, non-discriminatory reason for the challenged action." Id. And if Brennan "offers such a reason, the burden shifts back to the plaintiff to show the defendant's proffered reason is a pretext." Id. But "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions . . . ." Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994) (quotation omitted).

7

1.  **Prima Facie Case**

    a.  **Sex Discrimination[2]**

To establish a prima facie case of sex discrimination, Huwe must show that "(1) she was a member of [a] protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of discrimination." Lewis v. Heartland Inns of Am., L.L.C., 591 F.3d 1033, 1038 (8th Cir. 2010) (quotation omitted). Brennan argues that Huwe did not suffer any adverse employment action for purposes of her sex discrimination claims, which are only raised in Huwe I. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005). "'Mere inconvenience without any decrease in title, salary, or benefits' or that results only in minor changes in working conditions does not meet this standard." Wedow v. City of Kan. City, 442 F.3d 661, 671 (8th Cir. 2006) (quoting Sallis, 408 F.3d at 476).

Huwe believes her reassignment to the Deer River office was a demotion because she did not assume managerial duties. "[A] transfer that does not involve a demotion in form or substance[] cannot rise to the level of a materially adverse employment action." Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) (quotation omitted). As discussed in greater detail in her FMLA entitlement claims, Huwe's reassignment to the Deer River office was not a demotion in form or substance. Huwe also believes that

---

[2] It is unclear whether Huwe's FMLA claim is a discrimination claim, an entitlement claim, or both. If it is an FMLA discrimination claim, the Court addresses it together with the sex discrimination claim, because the analysis is similar.

8

Krage's failure to fix a financial issue during her maternity leave, her mental breakdown, and her discovery that "the Bovey office was in disarray" when she returned from the Deer River office amount to adverse employment actions. (Huwe's Opp'n Mem. (Docket No. 80) at 32.) These actions clearly involve no tangible change to Huwe's working conditions.

Huwe also argues that she suffered an adverse employment action because Brennan forced her to take a leave of absence, which resulted in her termination. But Huwe decided to take a leave of absence; Krage did not ask her to take leave. (Huwe Dep. at 131.) Although Brennan terminated Huwe's employment for remaining in a leave-without-pay status for more than one year, this after-the-fact action cannot support a discrimination claim filed before Huwe's termination.[3] Huwe has not established a prima facie case of sex discrimination.

### b.   Retaliation

"To establish a prima facie case of retaliatory discrimination, a plaintiff must show: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between participation in the protected activity and the adverse employment action." Buettner v. Arch Coal Sales Co., 216 F.3d 707, 713-14 (8th Cir. 2000).

As discussed above, Huwe cannot establish an adverse employment action, and her retaliation claim in Huwe I fails on that basis. Brennan concedes that Huwe engaged

---

[3] The Court addresses the termination in Huwe's claims under Huwe II.

in a protected activity on or about March 28, 2014[4] (see Secord Decl. Ex. K (Docket No. 62-11) at 2), and that Huwe's termination was an adverse employment action. Brennan argues that Huwe cannot establish a causal connection. "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013).

Huwe responds that Brennan's actions forced her to remain in a leave-without-pay status, which ultimately led to her termination. But Huwe provided insufficient medical documentation to permit her to return to work. (Oveson Dep. (Docket No. 79-6) at 32-33.) USPS policy provides that an employee returning to duty "must provide documentation from his or her health care provider that he or she is able to perform the functions of the position with or without limitation," which are "accommodated when practical." (See Secord Decl. Ex. JJ (Docket No. 62-36) § 513.37.) Huwe provided multiple, nearly identical notes from her psychologist stating that she should "be placed on a leave of absence for six months" to resolve her diagnoses of "Major Depression, Social Phobia and Generalized Anxiety Disorder which appear to be a direct result of the work stress she has been experiencing." (Secord Decl. Exs. KK, LL, MM (Docket Nos. 62-37, 62-38, 62-39).) This documentation is insufficient to enable her to return to work.

Huwe also asserts that she has established a causal connection because of the temporal proximity between her alleged discriminatory conduct and her termination. But

---

[4] Huwe asserts that the protected activity began on March 11, 2014, when she discussed compensation and staffing issues with Krage. (Huwe's Opp'n Mem. at 35.) But this discussion does not "express[] a belief that the employer has engaged in discriminatory practices. Buettner, 216 F.3d at 714.

"[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999). And the temporal proximity "must be very close" if reliance on temporal proximity is the sole basis for asserting a causal connection. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (quotation omitted).

Huwe initiated her first EEO activity on September 8, 2014, and her second EEO activity on September 13, 2015. Brennan sent her a proposed notice of termination on February 16, 2016, and ultimately terminated her on August 15, 2016. (Secord Decl. Exs. P, GG.) Huwe received notice of her proposed termination more than one year after she filed her first EEO activity and more than five months after she filed her second EEO activity, and six months elapsed before her actual termination. This is far from "very close" temporal proximity, and Huwe has failed to establish her prima facie case of retaliatory discrimination because she has not established a causal connection.

### 2. Nondiscriminatory Explanations

Even if Huwe established her prima facie case of discrimination or retaliation, Brennan has satisfied her burden "to articulate some legitimate, nondiscriminatory reason" for the challenged conduct. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Brennan terminated Huwe for being in a leave-without-pay status for over one year. USPS policy states that an employee who has been absent for more than one year without pay may be terminated. (See Secord Decl. Ex. PP (Docket No. 62-42) § 365.342.) While termination is not mandatory, the manual provides that delaying

11

termination turns on whether there "is reason to believe the employee will recover within a reasonable length of time . . . not to exceed 90 days." (Id.)  Huwe was in a leave-without-pay status for nearly 18 months—well over the permitted time period. (Oveson Dep. at 46.)  Brennan has satisfied her burden regarding Huwe's termination.

Numerous nondiscriminatory reasons justified the remainder of Brennan's actions. Krage testified that he reassigned Huwe to the Deer River office after she told him that she would need time off for doctor appointments in order to "give her a chance to be able to make her appointments" because the "Bovey office itself didn't have any clerk staff." (Krage Dep. at 19-20.)  Krage also wanted an opportunity "to investigate allegations that were made against [Huwe]," because he received complaints about inappropriate credit card use and improper handling of bank deposit slips at the Bovey office. (Krage Dep. at 19-20, 23.)  Brennan also notes that Huwe's transfer to the Deer River office informally accommodated her inquiry into applying for post offices with fewer working hours or to transition to a non-management position. (See Secord Decl. Ex. U. (Docket No. 62-21).)

### 3. Pretext

Once an employer has articulated a legitimate, nondiscriminatory reason for the challenged conduct, "the burden shifts back to [the plaintiff] to show a genuine doubt that [the employer]'s justification is pretextual." Fiero, 759 F.3d at 878.  A plaintiff may establish pretext by "rebut[ting] the factual basis underlying the employer's proffered explanation" or by "show[ing] that the employer's proffered explanation was not the true reason for the action, but rather that the impermissible motive more likely motivated the employer's action." Id.

12

Huwe contends that the Brennan's proffered explanations have no factual support. She first argues that Brennan's justification for forcing her to stay in a leave-without-pay status, and ultimately the reason for termination, is pretextual because she supplied the requisite medical documentation. But as discussed above, her documentation was insufficient. Huwe's insistence that Krage justified her reassignment based on her newborn is likewise without merit.

Next, Huwe argues that justifying the reassignment based on staffing issues is false because, about one month after she transferred to the Deer River office, the only other staff clerk moved to the Bovey office. But Metzer requested that the staff clerk move to the Bovey office—not Krage. (Huwe Dep. at 187; 188; Metzer Dep. at 22-24.) Indeed, there is no evidence that Krage even knew that Metzer requested the move.

Finally, Huwe argues that reassigning her to investigate her is pretextual because "the alleged concerns that [Krage] wanted to look into were so unimportant that he did not bother to talk to [her] for five months." (Huwe's Opp'n Mem. at 28-29.) But Huwe admitted that Krage repeatedly tried to set up meetings with her, and she was unable to attend. (Huwe Dep. at 104-07.) Krage testified that he decided to reassign Huwe back to the Bovey office because she "wasn't responding to anything to be able to resolve the issue." (Krage Dep. (Docket No. 79-9) at 50.)   On this record, Huwe has not established pretext, and all of her Title VII claims must be dismissed.

### C.     FMLA Entitlement

An actionable FMLA entitlement claim requires an employee to claim "the denial of a benefit to which [s]he is entitled under the statute." Pulczinski v. Trinity Structural

Towers, Inc., 691 F.3d 996, 1005 (8th Cir. 2012). The FMLA requires an employer to restore its employee "to the position she held when the [FMLA] leave began or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." Cooper v. Olin Corp., 246 F.3d 1083, 1090 (8th Cir. 2001) (citing 29 U.S.C. § 2614(a)). Brennan contends that Huwe was not denied any FMLA benefit because her reassignment to the Deer River office was an equivalent position.

Huwe concedes that her salary and benefits did not change when she returned from maternity leave. But "the restoration of salary, title, and benefits does not necessarily constitute restoration to the same position within the meaning of section 2614(a)(1)(A) when the job duties and essential functions of the newly assigned position are materially different." Id. at 1091. She argues that her reassigned position was not equivalent because she "was never installed as OIC . . . , did not have managerial authority, and did not perform any postmaster duties there." (Huwe's Opp'n Mem. at 21.)

But Krage made plans to transfer OIC duties at the Deer River office to Huwe. (Huwe Dep. at 105.) At her deposition, Huwe testified that Krage proposed one or two dates for transferring the Deer River OIC duties to her. (Id. at 106.) But because she was unable to meet with Krage, the transfer never took place. (Id. at 107.) Notably, Huwe did not testify that Krage had refused to transfer OIC duties to her at the Deer River office. Thus, her reassignment to the Deer River office, even though she did not assume duties as the OIC, was an equivalent position.

Even if her reassignment was not an equivalent position, Huwe's failure to assume OIC duties was unrelated to any FMLA benefit. After a plaintiff establishes FMLA interference, "the burden shifts to the employer to prove there was a reason unrelated to the employee's exercise of FMLA rights for [denying a FMLA benefit]." Ballato v. Comcast Corp., 676 F.3d 768, 772 (8th Cir. 2012) (citation omitted). Here, Huwe's own testimony establishes that the failure to install her as OIC was unrelated to her FMLA leave. (Huwe Dep. at 107.) Because Brennan did not deny Huwe any FMLA benefit, her entitlement claim is dismissed.

**D.    Disability Discrimination**

The ADA and the Rehabilitation Act prohibit an employer from discriminating against an employee based on a qualified disability. 29 U.S.C. § 794(a); 42 U.S.C. § 12112(a). Huwe contends that Brennan refused her requested accommodation and that Brennan's nondiscriminatory reasons for refusing are pretextual. But because "[r]easonable accommodation claims are not evaluated under the McDonnell Douglas burden-shifting analysis," it is unclear whether Huwe's disability discrimination claims are for disparate treatment or for failure to make reasonable accommodations. Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004). The Court will analyze both.

**1.    Reasonable Accommodation**

Under a reasonable accommodation claim, discrimination occurs if an employer fails to "make reasonable accommodation to the known physical or mental limitations of an . . . employee with a disability, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its business." Id. at

766 (quoting 29 C.F.R. § 1630.9(a)).  Brennan argues that Huwe's accommodation was not reasonable and unduly burdensome.

Huwe's only requested accommodation was reassignment to a postmaster position under a different supervisor.  (2d Huwe Dep. (Docket No. 62-40) at 28; Huwe Dep. at 233-34.)  But a "request for a different supervisor [i]s not a reasonable accommodation request." Freese v. Hawkeye Cmty. Coll., 149 F. App'x 540, 542 (8th Cir. 2005).

Even if her request was reasonable, Brennan argues that it was unduly burdensome because no equivalent positions were available.  (See Secord Decl. Ex. B (Docket No. 62-2) at 25.)  Huwe testified that she was told no positions were available.  (2d Huwe Dep. at 27.)  She now claims that several positions were actually open.  (Huwe Ex. 9 (Docket No. 79-2) at 1-2.)  But the positions she identifies are either for six-hour relief postmasters, which are not equivalent to her previous job, or are for post offices over 100 miles away, which was outside of her requested area.  Huwe cannot now, in response to a summary-judgment Motion, attempt to create a factual dispute by claiming that she was willing to accept additional positions.  Her reasonable accommodation claim is dismissed because her requested accommodation was not reasonable and unduly burdensome.

### 2. Disparate Treatment

In the absence of direct evidence of discrimination, the Court analyzes a disparate treatment claim under the McDonnell Douglas framework.  Peebles, 354 F.3d at 766. Even if Huwe can establish a prima facie case, McNary v. Schreiber Foods, Inc., 535 F.3d 765, 768-69 (8th Cir. 2008), however, her disparate treatment claim fails because she cannot establish pretext.

16

Huwe argues that the reason for her termination was pretextual because she provided sufficient medical documentation and the relevant USPS policy regarding termination is discretionary. As previously discussed, Huwe's documentation was insufficient, and while the policy may be discretionary, Huwe exceeded even the maximum time period permitted under that discretion. Huwe also argues that Brennan caused her to remain in a leave-without-pay status by rejecting her accommodation request. But her request was not reasonable and unduly burdensome. The record demonstrates that Huwe was terminated in accordance with USPS policy, after Brennan attempted to resolve her concerns and issues. Huwe has not established sufficient evidence of pretext, and her disparate treatment claim is dismissed.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Summary Judgment (Docket No. 60) is **GRANTED**; and

2. Civ. No. 15-3687 and Civ. No. 17-1647 are **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 9, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge